UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-225

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| APPROXIMATELY $9,962.00 IN U.S. ) | |
| CURRENCY seized from Leonard Thomas ) | |
| Norris on or about January 5, 2023, in Haywood ) | |
| County, North Carolina, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the Government's Motion for Default Judgment of Forfeiture. (Doc. No. 7). Pursuant to Fed. R. Civ. P. 55(b)(2), the Government requests that the Court enter a Default Judgment of Forfeiture with respect to the approximately $9,962.00 in U.S. Currency ("Defendant Currency") seized from Leonard Thomas Norris as identified in the Complaint. For the following reasons, the motion is **GRANTED**.

## FACTUAL BACKGROUND

Where, as here, an entry of default occurs, the defaulted party is deemed to have admitted all well-pleaded allegations of fact in the complaint. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2011); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied"). Thus, the factual allegations in the Government's Verified Complaint, Doc. No. 1, are deemed admitted as true. The following is a recitation of the relevant, admitted facts:

1

On the evening of January 5, 2023, Detective Reagan with the Haywood County Sheriff's Office observed a blue Dodge Charger turn into the parking lot of TravelCenters of America, located at 153 Wiggins Road, Candler, North Carolina. (Doc. No. 1 ¶ 7). This location is well-known to law enforcement to be a "meet location" for the sale and distribution of illegal narcotics. (Id. ¶ 8).

The Dodge Charger pulled near the gas pumps and a male and female exited the vehicle and went into the store. (Id. ¶ 9). Over approximately the next 30 minutes, the two individuals made several trips back and forth from the vehicle to the store. (Id.). The two individuals then got back into the Dodge Charger and departed from the gas station traveling west on I-40. (Id. ¶ 10).

Detective Reagan followed the vehicle. Id. ¶ 11. As the Dodge Charger crossed into Haywood County, it slowed down to approximately 30-35 mph in a 60-mph zone. It then quickly increased its speed to approximately 75-85 mph in a 60-mph zone. (Id.). Deputy Zetterholm with the Haywood County Sheriff's Office, who was also in the vicinity, observed the Dodge Charger travel too closely to the rear of a tractor trailer. (Id. ¶ 12). When Deputy Zetterholm approached the Dodge Charger, the driver also initiated a lane change before illuminating his turn signal. (Id. ¶ 13). Deputy Zetterholrn turned on his emergency lights and conducted a traffic stop of the Dodge Charger. (Id. ¶ 14). Deputy Zetterholm initiated the traffic stop before Exit 31, hoping that the vehicle would stop between the exit ramp and the interstate to allow space for the stop to be safely conducted. (Id.). However, the Dodge Charger proceeded past the off-ramp, and drove on the shoulder until the end of the ramp before finally coming to a stop. (Id.).

Deputy Zetterholm approached the passenger side of the vehicle and observed a female, later identified as Cassandra Danielle Hood. (Id. ¶ 15). A male was in the driver seat, later

identified as Leonard Thomas Norris. (Id.). Deputy Zetterholm asked Mr. Norris to exit the vehicle. After frisking him for weapons, Deputy Zetterholm asked Mr. Norris to sit in the passenger seat of his patrol car. (Id. ¶ 16).

Mr. Norris behaved suspiciously during the traffic stop. (Id. ¶ 17). Among other things, Mr. Norris blinked his eyes at an abnormally fast rate, and stared intently at his vehicle. (Id.). He had difficulty focusing on the questions that Deputy Zetterholm asked him and kept clasping and unclasping his hands from his drink. (Id.). Deputy Zetterholm asked Mr. Norris about his trip. Mr. Norris said that he was returning to his home in Clarkrange, Tennessee, after spending the day in Charlotte, North Carolina. (Id. ¶ 18). During the traffic stop, Mr. Norris admitted that there was marijuana in the vehicle in the back passenger door drink holder compartment. (Id. ¶ 19).

Deputy Zetterholm asked another officer to stay with Mr. Norris while he went to speak with Ms. Hood. (Id. ¶ 20). Ms. Hood made statements to Deputy Zetterholm that were inconsistent with the information provided by Mr. Norris. (Id. ¶ 21). In particular, Ms. Hood stated that they were returning from a trip to South Carolina (not Charlotte), and she said they had departed from Tennessee the previous day (not the same day). (Id. ¶ 22). At the beginning of the interaction, Ms. Hood pushed something down the front of her pants. (Id.). Deputy Zetterholm asked her what it was, and she said it was gauze for a burn that she had. (Id.).

Deputies conducted a probable cause search of the Dodge Charger. Id. ¶ 23. During the search, law enforcement located, among other things, two large bags of marijuana, a digital scale, a methamphetamine smoking pipe, a drug ledger, and a bag containing the Defendant Currency. (Id.). Mr. Norris stated that the Defendant Currency was his. (Id.).

3

During a search of Ms. Hood's person, law enforcement located and seized illegal narcotics, which included approximately .80 grams of fentanyl and approximately .84 grams of methamphetamine. (Id. ¶ 24).

Mr. Norris and Ms. Hood were arrested on drug charges. (Id. ¶ 25). Mr. Norris has a criminal history, which includes numerous prior drug-related charges. (Id. ¶ 26).

## PROCEDURAL BACKGROUND

On August 21, 2023, the Government filed a Verified Complaint for Forfeiture *In Rem*, alleging that the Defendant Currency seized from Mr. Norris is subject to civil forfeiture under 21 U.S.C. § 881(a)(6). (Doc. No. 1). On August 23, 2023, the Clerk issued a Warrant of Arrest *In Rem* for the Defendant Currency. (Doc. No. 2).

After the Government filed its Complaint, and in accordance with Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Government provided direct notice of this action to known potential claimants. Specifically, on August 24, 2023, the Government mailed notice and a copy of the Complaint to Mr. Norris and Ms. Hood. (Doc. No. 4). Additionally, in accordance with Supplemental Rule G(4)(a), the Government provided notice by publication as to all persons with potential claims to the Defendant Currency by publishing notice via www.forfeiture.gov for 30 consecutive days, beginning on August 25, 2023. (Id.).

The Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). During the pendency of this action, no individual or entity has made a timely claim to the Defendant Currency.

On January 11, 2024, the Clerk entered an Entry of Default. (Doc. No. 6).

## DISCUSSION

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the Government has the initial burden of establishing by a preponderance of the evidence that the defendant property is subject to forfeiture. 18 U.S.C. § 983(c)(1). A complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." FED. R. CIV. P. SUPP. R. G(2)(f). The Government may seek forfeiture of currency if it was used, or intended to be used in exchange for a controlled substance, or represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 801 et seq. See 21 U.S.C. § 881(a)(6).

Based on the allegations of the Government's Verified Complaint—which are deemed admitted as true—the Court finds that the Government has satisfied its burden of showing that the Defendant Currency is subject to civil forfeiture under 21 U.S.C. § 881(a)(6). Additionally, the Court finds that the Government has taken reasonable steps to provide notice to known potential claimants, and the Government has otherwise complied with the notice requirements set forth in Supplemental Rule G(4). No individual or entity has timely filed a claim to the Defendant Currency.

After careful review, the Court finds that the Government has established that default judgment is appropriate.

## JUDGMENT

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Government's Motion for Default Judgment of Forfeiture (Doc. No. 7) is hereby **GRANTED**

and Judgment of Forfeiture is **ENTERED** in favor of the United States against all persons and entities with respect to the Defendant Currency identified in the Complaint.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that any right, title, and interest of all persons to the Defendant Currency is hereby forfeited to the United States, and no other right, title, or interest shall exist therein.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the United States Marshal is hereby directed to dispose of the Defendant Currency as provided by law.

Signed: February 12, 2024

*[Signature]*

Max O. Cogburn Jr
United States District Judge